IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| CITY OF TAYLOR GENERAL EMPLOYEES RETIREMENT SYSTEM,  Plaintiff,  v.  FRAM RENEWABLE FUELS, LLC,  Respondent. | CASE NO.: 2:23-mc-1 |

**O R D E R**

Lead Plaintiff in <u>City of Taylor General Employees Retirement System v. Astec Industries</u>, Civil Action No. 1:19-cv-24 (E.D. Tenn., Feb. 1, 2019) (referred to here as "<u>City of Taylor v. Astec</u>" or "the underlying litigation"), filed a Motion to Compel in this Court.[1]  Docs. 1, 2.  This Motion concerns a subpoena issued in the underlying litigation and served on Fram Renewable Fuels, LLC ("Fram").  This Court held a status conference about this matter on January 10, 2024.  Doc. 19.  The Motion to Compel is fully briefed and ripe for consideration.  For the reasons explained below, I **GRANT** Lead Plaintiff's Motion to Compel.[2]  Specifically:

1. Fram shall produce copies of its purchase agreement and related financing agreement with Astec Industries, LLC ("Astec") for the purchase and financing of the wood-pellet plant located in Hazlehurst, Georgia ("the Hazlehurst Plant").

---

[1]  This Court has jurisdiction to resolve the Motion to Compel under Federal Rule of Civil Procedure 45(d).  No party has requested this matter be transferred to the issuing court under Rule 45(f), and I do not find there to be any exceptional circumstances that warrant transfer.

[2]  The Court also **GRANTS** Lead Plaintiff's Motion for Refund of Court Fees.  Doc. 6.  The Court **DIRECTS** the Clerk of Court to refund $353.00 to Lead Plaintiff's Counsel.

2. Fram shall produce all documents and communications concerning Fram's ability to repay its loan from Astec, any negotiations related to extensions of the loan term, and any agreements extending the loan term.

3. Fram shall produce all documents and communications concerning meetings between Fram and Astec from January 1, 2016 through December 31, 2018. This includes meetings conducted in person, telephonically, or on video calls. This includes all notes taken, all presentations given, documents sufficient to show the attendees of each such meeting, and documents sufficient to show each visit by Astec personnel to the Hazlehurst Plant.

4. Fram shall produce documents sufficient to show the daily saleable production and the use of natural gas of each line at the Hazlehurst Plant. Fram shall also produce documents sufficient to show how this information was communicated to Astec.

5. Fram shall provide a privilege log of any information it withholds consistent with Federal Rule of Civil Procedure 45(e)(2).

6. Fram shall provide an affidavit or declaration describing the steps Fram has taken to search for responsive documents, including, but not limited to, each custodian queried and the search terms used for electronic searches.

## BACKGROUND

The instant Motion to Compel concerns a subpoena issued in City of Taylor v. Astec, a case pending in the Middle District of Tennessee. City of Taylor v. Astec is a putative securities class action. See Doc. 2 at 5–8. Defendant Astec sold a plant to Fram for producing biomass fuel wood pellets to sell to the European Union market. Id. Lead Plaintiff alleges Astec financed Fram's $60 million purchase. Lead Plaintiff alleges the plant failed, resulting in a loss of more than $65 million to Astec. Lead Plaintiff further alleges Astec misled investors about the sale to Fram. Fram is not a party to the underlying litigation.

Lead Plaintiff served a subpoena on Fram on July 13, 2022. Doc. 3-1. Lead Plaintiff requested seven categories of communications and other documents related to Fram's transactions with Astec and the operation of the wood-pellet plant. Id. Lead Plaintiff and Fram

agreed on September 17, 2022, Fram would produce materials to responsive to four categories, which were narrowed from the original seven categories. Doc. 3-3 at 7 ("Our client [Fram] will produce any documents which are responsive to the narrowed requests as set forth in your email below."). Specifically, the parties agreed Fram would respond to the following four requests:

> Request 1: Fram will produce copies of the purchase agreement and related financial agreements.
> . . . .
> Request 2: Fram will produce all documents and communications concerning Fram's ability to repay the loan, any negotiations related to extensions of the loan term, and any agreements extending the loan term.
> . . . .
> [Request 3]: All Documents and Communications concerning meetings—whether in person, telephonically, or on video calls—between [Fram] and Astec [limited to January 1, 2016 through December 31, 2018], including without limitation:
>
>   a.   all notes taken at such meetings;
>
>   b.   all presentations given at such meetings;
>
>   c.   documents sufficient to show the attendees of each such meeting;
>
>   d.   documents sufficient to show each visit by Astec personnel to the Hazlehurst Plant
>
> . . . .
> [Request 4]: Fram will produce documents sufficient to show (a) saleable production of each line and (b) the use of natural gas on each line. Fram will also produce documents to show how (a) and (b) were communicated to Astec.

Doc. 2 at 20–24 (footnotes omitted); see also Doc. 3-3 at 7–10 (conferral emails showing the parties agreed to the four narrowed requests).

Fram produced some documents to Lead Plaintiff on February 10, 2023, objecting "to the extent [the requests] seek financial information and/or proprietary information." Id. at 5. Specifically, Fram produced 11 email chains, or "families," dated between April 2017 and August 2017. Doc. 2 at 10. Lead Plaintiff maintains all the emails came from a single custodian,

Harold Arnold.[3]  Id.  Fram withheld numerous email attachments.  Id.  Fram also produced a single spreadsheet titled "HWP Cash Forecast through August 2017."  Doc. 3-3 at 4.

After notifying Fram of its intent to do so, Lead Plaintiff filed the instant Motion to Compel and supporting brief, arguing Fram's production is incomplete and asking the Court to order Fram to produce documents responsive to the four agreed upon categories.  Docs. 1–3.

## LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."  Fed. R. Civ. P. 26(b)(1).  The scope of discovery allowed through nonparty subpoenas is generally the same as the scope of discovery allowed under other discovery rules.  See Jordan v. Comm'r, Miss. Dep't of Corr., 947 F.3d 1322, 1329 (11th Cir. 2020) (holding the relevancy requirement applies to subpoenas under Rule 45 (citing Fed R. Civ. P. 26(b)(1); Fed. R. Civ. P. 45 advisory committee's note to the 1970 amendment)); Gamache v. Hogue, 595 F. Supp. 3d 1344, 1349 (M.D. Ga. 2022) ("The general rules of discovery outlined in Rule 26 govern the scope of a Rule 45 subpoena.").

If a non-party serves written objections to a subpoena request, the serving party may move to compel production.  Fed. R. Civ. P. 45(d)(2)(B)(i).  Court orders compelling production must protect non-parties from significant expense resulting from compliance.  Fed. R. Civ. P. 45(d)(2)(B)(ii).  However, a general objection on the grounds of significant expense or undue burden is not an adequate response to a subpoena.  "A more particularized argument is required, such as providing the 'money, time, work-hours, or other cost that [the party] faced in complying with the subpoena.'"  Smartmatic USA Corp. v. Montgomery, Case No. 2:23-mc-5, 2023 WL

---

[3]  During the January 10, 2024 status conference, Fram's counsel disputed this assertion and stated she was unsure why the documents would appear to be from one custodian.  Fram's counsel did not elaborate further.

4662241, at *3 (M.D. Fla. July 20, 2023) (quoting ML Healthcare Servs., LLC v. Publix Super Markets, Inc., 881 F.3d 1293, 1306–07 (11th Cir. 2018)).

## DISCUSSION

Lead Plaintiff asks the Court to order Fram to search for and produce all non-privileged materials responsive to the four categories Fram agreed to during conferral. Doc. 2 at 11–12. Lead Plaintiff argues the four agreed-to categories seek relevant documents and are proportional to the underlying litigation, which could potentially involve damages of up to $160 million. Id. at 16–20. Lead Plaintiff argues Fram has not shown the agreed-to subpoena requests present any particular undue burden. Id. at 15–16.

Fram argues in its Response it produced all responsive non-privileged documents in its possession. Doc. 7 at 5. However, Fram also acknowledges it withheld "confidential" financial information, which it contends "would not be relevant to the Tennessee litigation." Id. at 3. Fram additionally argues Lead Plaintiff should first attempt to collect the subpoenaed documents from parties to the litigation (i.e., Astec) to avoid unduly burdening Fram. Id. at 5. Fram requests costs and attorney's fees for responding to Lead Plaintiff's Motion. Id. at 6.

Fram's arguments are vague and unconvincing. Lead Plaintiff requests communications and other documents that are plainly relevant to the underlying litigation, namely documents related to the Fram/Astec transaction. Fram provides no argument about how the four requested categories of materials lack relevance.

Fram also failed to make any particularized showing about the expense or burden it faces in complying with the narrowed four-category subpoena. Fram only generally complains it must pay for "gathering, reviewing, redacting, and producing documents in Astec's possession already." Doc. 7 at 6–7. Fram provides no details about the money or time involved.

5

During the January 10, 2024 status conference, Fram's counsel discussed Lead Plaintiff's request for production data (i.e., data about how many wood pellets the plant produced during the time period relevant to the underlying litigation). Fram argued Lead Plaintiff's request for production data is unduly burdensome. Fram's counsel stated—for the first time—Fram would have to cease all plant operations to even look for the requested production data. Fram's counsel implied searching for and accessing the data would require Fram to divert essential manpower away from plant operations, which would result in a complete plant shutdown. But Fram's counsel failed to provide any details about what would be involved in such a search or what manpower would be diverted. Counsel did not estimate how long such a shutdown would take, how much a shutdown would cost, or who would search for and access the data. Without more particularized information, this is not a sufficient basis for opposing Lead Plaintiff's request. Further, Fram agreed during conferral to produce this data without objection. Fram did not mention the prospect of a shutdown in conferral or in its Response brief and only raised the issue during the conference with the Court. Fram's failure to raise the issue earlier undermines its claim of undue burden. Indeed, Fram has not demonstrated with any specificity any undue burden it would incur in responding to the subpoena.

Fram states it has produced "all" non-privileged responsive documents, but that assertion is unconvincing for several reasons. First, as noted above, Fram has now acknowledged it has not conducted any search for production data. Second, Fram represented during conferral it possessed handwritten and digital notes of meetings between Farm and Astec. See Doc. 3-3 at 8 (conferral email agreement between Fram and Lead Plaintiff). Even so, Fram has not produced those documents. Third, in one of the four agreed-upon categories, Lead Plaintiff requested a copy of the agreement for the $60 million purchase of the disputed plant. During the January 10,

2024 conference, Fram's counsel stated Fram looked for the agreement but could only locate a draft of the agreement. Fram's counsel stated Fram did not produce the draft agreement because it was not a final version. Fram's position strains credulity. It is highly unlikely Fram would be unable to locate an agreement for such a sizable transaction. The more likely explanation is Fram has not conducted an adequate search for responsive documents. Considering the record as a whole, it appears Fram has not taken adequate steps to search for responsive documents.[4]

Fram raises one other basis for opposing Lead Plaintiff's request: confidentiality. Fram refused to produce certain unidentified financial information based on confidentiality, and it maintains it should not be ordered to produce documents on this basis. Fram does not identify the request it objects to and does not identify any particular financial information it withheld on confidentiality grounds. Instead, Fram vaguely states it has withheld "confidential financial information and/or proprietary business information . . . ." Doc. 7 at 3. Fram identifies no particular harm it faces in disclosing the requested materials. Furthermore, the parties all recognize the court presiding over the underlying litigation has issued confidentiality order that governs documents sought from nonparties. Fram fails to explain why that protective order does not provide adequate protections for the disclosure of Fram's financial information. Ultimately, Fram's refusal to produce documents on confidentially grounds is baseless.[5]

In light of these facts, I **GRANT** Lead Plaintiff's Motion to Compel. Fram shall produce documents that are responsive to the four agreed-upon categories, which are set forth in this Order. Fram shall also describe the steps taken to search for responsive material. See Collins-

---

[4]   Of course, it is possible—even if unlikely—the final purchase agreement and all other responsive documents have been lost or destroyed. Thus, I am requiring Fram to provide an affidavit or declaration describing the steps Fram has taken to search for responsive documents.

[5]   A respondent may move to quash or modify a subpoena on confidentiality grounds under Rule 45(d)(3), but Fram has not made such a motion.

7

Williams v. Contour Eastwyck LLC, No. 1:20-CV-3129, 2022 WL 17828934, *92 (N.D. Ga. Dec. 15, 2022) (describing counsel's obligations to "confirm that the appropriate data was searched or physically search places where evidence is typically stored" (collecting cases)).

## CONCLUSION

For the foregoing reasons, I **GRANT** Lead Plaintiffs' Motion to Compel. Specifically:

1. Fram shall produce copies of its purchase agreement and related financing agreement with Astec Industries, LLC ("Astec") for the purchase and financing of the wood-pellet plant located in Hazlehurst, Georgia ("the Hazlehurst Plant").

2. Fram shall produce all documents and communications concerning Fram's ability to repay its loan from Astec, any negotiations related to extensions of the loan term, and any agreements extending the loan term.

3. Fram shall produce all documents and communications concerning meetings between Fram and Astec from January 1, 2016 through December 31, 2018. This includes meetings conducted in person, telephonically, or on video calls. This includes all notes taken, all presentations given, documents sufficient to show the attendees of each such meeting, and documents sufficient to show each visit by Astec personnel to the Hazlehurst Plant.

4. Fram shall produce documents sufficient to show the daily saleable production and the use of natural gas of each line at the Hazlehurst Plant. Fram shall also produce documents sufficient to show how this information was communicated to Astec.

5. Fram shall provide a privilege log of any information it withholds consistent with Federal Rule of Civil Procedure 45(e)(2).

6. Fram shall provide an affidavit or declaration describing the steps Fram has taken to search for responsive documents, including, but not limited to, each custodian queried and the search terms used for electronic searches.

I **DENY** Fram's request for attorney's fees associated with responding to Lead Plaintiff's Motion.

**SO ORDERED**, this 23rd day of January, 2024.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA